[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a taking by the City of Waterbury of both temporary and permanent easements over land owned by the plaintiff, Walter A. Smethurst, Jr. at 859 and 863 Frost Road, CT Page 13617 Waterbury, Connecticut. The taking occurred on April 20, 1995 with compensation of $1,000 being paid with respect to 859 Frost Road and $22,700 with respect to 863 Frost Road. The Certificate of Taking was amended by agreement of the parties on October 13, 1995 because of errors discovered in the original certificate and to provide for a right of passage over the plaintiff's driveway for purposes of constructing or maintaining the Mad River Project.
There are certain items of damage agreed upon by the parties. The City's appraised damage of $1,000 to 859 Frost Road has been accepted by the plaintiff as adequate compensation. Also, both the plaintiff and the defendant appraised losses of various trees, shrubbery and the garden and arrived at virtually identical figures for this element of loss. The plaintiff's appraisal was $8,641 and the defendant's was $8,971. The report of the City of Waterbury's Nocera appraisal report used a figure of $8,471 for this damage. If all three figures are added together and divided by three, the average is $8,694.33 or $8,700. Taken together, the agreed upon loss for 859 Frost Road and landscaping loses at 863 Frost Road is $1,000 plus $8,700 for a total of $9,700.
The commencement of an action in eminent domain in order to gain permanent and temporary easements over portions of the plaintiff's property became necessary due to persistent flooding along the Mad River which flows next to the Smethurst property. The United States Army Corps of Engineers designed a plan to widen the river channel adjacent to and on Smethurst's property to alleviate the flooding problems upstream.
At trial, the plaintiff claimed that the easements required the relocation of his driveway and an adjacent wall which significantly added to his loss and damages. The City contended that it was never the intent of the City to require the plaintiff to relocate his driveway. The original easement included the driveway only to provide the City with access to the river. Therefore on October 13, 1995 the City amended its Certificate of Taking whereby the easement area encompassing the plaintiff's driveway would be utilized as an access area only and thus would have minimal effect on the plaintiff's use as a driveway. This amendment cured any claim by the plaintiff that his driveway and adjacent wall needed to be relocated.
There are two temporary easements being taken, Area B-1 CT Page 13618 adjacent to the plaintiff's driveway and Area B-2 adjacent to the permanent easement in the back yard. The temporary easements are to be used for the storage of construction equipment and material and for other purposes in connection with the Mad River project. These easements will expire on December 31, 1999.
The principal issue in this case is the damage caused by the permanent easement which comprises 8, 996 square feet. This easement encompasses most of the backyard, the driveway and portions of the turn-around area in front of the garage and all land along the adjacent bank of the Mad River. The rights taken by the City in the permanent easement area, excluding the driveway, included the right to reconstruct, inspect, alter, improve, remove or relocate materials to provide for the free flow of water in the Mad River, the right to keep clear or cut all trees, undergrowth or other obstructions within the easement area and the right of ingress and egress over adjoining lands of the plaintiff, his heirs, successors or assigns. Furthermore, the plaintiff, his heirs, successors and assigns are prohibited from excavating or altering the land within the easement area without written permission of the city and cannot construct or locate any building, structure or obstruction within the easement area (Paragraph 9, Amended Certificate of Taking, October 13, 1995). If necessary, the City acquires all rights normally associated with the ownership of land, leaving the plaintiff with only bare legal title. If necessary, the city could remove all land within the permanent easement to create a wider channel for the Mad River.
In the evaluation of the damages caused by the permanent taking of the easements, the Nocera report on page 62 sets forth its conclusion,
 "It is our belief, which has been supported with discussions with the Army Corp of Engineers, that the described permanent easement is tantamount to a taking in that the area will be permanently displaced with a concrete retaining wall with a 4' anchor fence above, running two-thirds of the length of the property. Further there will be a band of rip-rap, extending from that point to the southern property line and beyond.
 This course of action will effectively strip the homeowner of any utility that is presently his." CT Page 13619
The Nocera report concludes that the damages caused by the taking of the permanent easements amounted to $12,150 and that damages caused by the temporary easements amount to $1,216. The Nocera damages evaluation amounts to a total of $22,000 which includes permanent and temporary easement plus the additional losses for tree and shrubbery and garden losses.
On the other side, the plaintiff's assessor calculates the damages to value incurred by the loss of the permanent easement to be $17,615.60 plus $2,756.25 for the driveway access easement or a total of $20,371.85 rounded to $20,400. This figure is in addition to the figure of $11,900 which Mr. Benedict ascribed to the loss of $1,000 at 859 Frost Road, landscaping loss of $8,700 and loss of $2,200 due to the temporary easements. The plaintiff's figure totals $32,100.
In summary, the plaintiff list his damages at $48,100 by addition of the following figures:
 859 Frost Rd. $1,000.00 863 Frost Rd. (landscaping) 8,700.00 863 Frost Rd. (temp. easements) 2,200.00 863 Frost Rd. (perm. easement) 20,400.00 863 Frost Rd. effect of permanent 15,800.00 on marketability of remaining --------- land and home
Total $48,100.00
Regarding the underlying dispute regarding the value of the plaintiff's real estate interest before the taking in eminent domain by the City of Waterbury, the court was impressed by Mr. Nocera's awareness of practically 100 percent of all real estate transactions in the vicinity of the east side of the City of Waterbury during the period in question in this taking. The court therefore finds that the underlying value to be $95,000 as testified to by Mr. Nocera.
Relative to the questions raised by the valuation of the damages caused by the taking of the City of Waterbury, Mr. Nocera set the value at $73,000. Mr. Nocera in arriving at his figures of the value after the taking took into consideration the loss of trees in computing the market value after the taking. However, Mr. Benedict calculated the loss of trees and shrubs in addition CT Page 13620 to computing the market value after the taking. The court disagrees with this contention.
According to the Benedict report, the plaintiff will be left with only a long narrow strip of land for a back yard and that a portion of the driveway turn-around area will be lost. He also contends that most of the plaintiff's backyard will be rip-rap and it will be unattractive to the eye. He argues that a further reduction in the value of the plaintiff's land with amount to $15,800. The court agrees that there will be some reduction in value of the plaintiff's land because of the treatment of the easement area by the city. However, the court is of the opinion after the examination of the property and the evaluation of the arguments put forth by the parties that the reduction in the valuation of the remaining property of the plaintiff will amount to $6,000.
In view of the above, the court concludes that the plaintiff is entitled to a finding that his total damages amounts to $29,000 plus interest over and above the deposit of $23,700 since April 20, 1995 plus appraisal fees of $3,125 plus $1,200 for court testimony pursuant to C.G.S. § 48-26.
O'BRIEN, STR